**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RYAN O'DONNELL and MICHAEL GOREE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 23 C 1192 |
| v. | ) ) | Hon. John J. Tharp, Jr. |
| CITY OF CHICAGO, a municipal corporation, and URT United Road Towing, Inc., a Delaware corporation, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

For decades, the City has impounded the vehicles of owners who commit multiple parking or traffic violations and do not pay their tickets after ample process and repeated attempts by the City to obtain payment. These efforts include giving notice and the opportunity to contest (or pay) when the underlying tickets are issued; when the vehicle becomes eligible for immobilization (also known as "booting"); when the vehicle actually is booted; and when the vehicle is impounded. If, after all this process, an owner still declines to properly respond, the vehicle ultimately may be disposed of, although it is first held for a period of time (which can be extended upon request) to allow the owner to respond and meet the requirements for retrieving the vehicle.

Plaintiffs claim that their vehicles were disposed of under this program, and that the disposal constituted an unconstitutional taking without compensation. This claim fails. It is identical to a claim alleged in another case pending in this District — *Walker v. City of Chicago*, No. 20 C 1379 (N.D. Ill.) — and dismissed by Judge Andrea R. Wood. Indeed, disposals under this program are not a taking because they are not an exercise of the eminent domain power. As the D.C. Circuit held after reviewing a virtually identical program (and relying on Supreme Court precedent), and as Judge Wood agreed after reviewing the City's program challenged here, disposal occurs at the tail end of an escalating enforcement process akin to forfeiture proceedings, for which no compensation is required by takings doctrine. Plaintiffs' claims against the City should therefore be dismissed.

**BACKGROUND**

A.      **The City's Immobilization Program.**

Plaintiffs are two individuals whose cars were impounded and disposed of pursuant to

section 9-100-120 of the Municipal Code of Chicago ("MCC"). Compl. ¶¶ 59–63.  That section governs booting, towing, and disposal of vehicles whose owners accrue but do not pay a certain number of tickets for parking, compliance, or other vehicle-related violations. An overview of the process follows:

When a vehicle owner receives a ticket, the owner can either pay it or challenge it through a hearing at the City's Department of Administrative Hearings.  *See* MCC §§ 9-100-040(a), -045, -050.  If the owner ignores the ticket by not paying or contesting, or responds by contesting but then loses the challenge, a determination of liability is entered.  *See id*. §§ 9-100-050(a), (d); 9-100-090.

When an owner has three or more unpaid final determinations of liability in total, or two unpaid determinations that are more than a year old, the vehicle becomes eligible for booting. *See id*. § 9-100-120(b).  At that point, the owner is sent a notice of "impending vehicle immobilization" listing the outstanding tickets.  *Id.*  The owner then has 21 days to pay the amounts, and, if the owner does not, the vehicle is placed on an immobilization list.  *Id.*  Within that 21 days, the owner can also challenge the notice of impending immobilization by showing that he does not have the requisite number of tickets, or that he has already paid them.  *Id.*

After a vehicle is placed on the immobilization list, it can be booted when discovered on the street.  If the vehicle is booted, the owner has at least 24 hours to pay the outstanding amounts or enter into a payment plan before the vehicle is towed, and additional time may be requested.  *See id.* § 9-100-120(c), (d)(1) & (2).  The owner also has 21 days to seek a hearing to challenge the booting or any subsequent impoundment.  *See id.* § 9-100-120(c), (e).  A notice explaining how the owner can get the boot released by paying the amounts due or requesting a hearing is placed on the vehicle at the time of booting.  *See id.* § 9-100-120(c).  The owner of an

2

immobilized vehicle may also secure release of a vehicle by entering into an installment payment plan or participating in the "Clear Path Relief Pilot Program." *See id.* § 9-100-120(d).

If the vehicle is ultimately towed and impounded, the owner is sent a notice by certified mail within 10 days. *See id.* § 9-100-120(f). The notice informs the owner that he may request a hearing to challenge the immobilization and impoundment. *Id.* It also states that, if the vehicle is not claimed within 21 days from the date of the notice, the vehicle may be sold or otherwise disposed of, although the owner may also request a 15-day extension. *Id.*

In sum, the City provides vehicle owners with notice and a hearing opportunity at each stage of the process: It is provided for each underlying ticket as those tickets are accrued; then again prior to the vehicle being deemed eligible for immobilization; then again once the vehicle is booted; and then again after the vehicle is impounded. A vehicle is disposed of at the end of this process only if the owner either serially ignores these opportunities or proves unsuccessful in his challenges and fails to pay the amounts due or enter into a payment plan.

**B.     Plaintiffs' Claims.**

Plaintiff Ryan O'Donnell alleges that on May 19, 2021, the City towed and impounded his vehicle pursuant to MCC section 9-100-120. *Id.* ¶ 59. Defendant URT United Road Towing ("URT"), a private company that is contracted to tow on behalf of the City, handled and processed the tow. *Id.* The City allegedly disposed of O'Donnell's vehicle on July 8, 2021, by selling it for scrap value to URT, which then sold the vehicle to a third party. *Id.* O'Donnell still owes boot, tow, and storage fees, *id.*, and he has at least six unpaid tickets, *id.* ¶ 60.

Plaintiff Michael Goree alleges that on January 28, 2018, his vehicle was towed and impounded by the City, via URT, pursuant to MCC section 9-100-120. *Id.* ¶ 61. The City then released the vehicle to the vehicle's lienholder, which sold it to a third party on April 19, 2018. *Id.* The basis for the impoundment and disposal of the vehicle was that the co-signor of the

3

vehicle accrued unpaid tickets on one of the co-signor's other vehicles. *Id.* Goree was liable for the boot, tow, and storage fees for the vehicle, which were paid, *id.*, and he has at least two unpaid tickets, *id.* ¶ 63.

In Count I, Plaintiffs claim that the impoundment of vehicles under the City's program is a taking of private property without just compensation in violation of the Fifth Amendment and the Illinois Constitution, and they seek declaratory and injunctive relief. *Id.* ¶¶ 71–75. In Count II, Plaintiffs seek money damages under 42 U.S.C. § 1983 for the alleged federal taking. *Id.* ¶¶ 76–81. Counts III and IV raise state-law unjust enrichment claims based on the City's and URT's sale of vehicles that were impounded and disposed of under MCC section 9-100-120. *Id.* ¶¶ 82–91.

## C.    *Walker v. City of Chicago.*

Another case in this District — *Walker v. City of Chicago*, No. 20-CV-1379 — raises claims identical to those here. Indeed, the first four counts of the amended complaint in *Walker* track the four counts of this case. *See* Ex. 1 hereto (*Walker* Amended Complaint), Count I (injunctive and declaratory relief based on claim that City's program works a taking in violation of the Fifth Amendment and Illinois constitution); *id.* Count II (section 1983 damages claim based on the unconstitutional taking); *id.* Count III (Illinois unjust enrichment claim against City based on the unconstitutional taking); *id.* Count IV (Illinois unjust enrichment claim against URT based on the unconstitutional taking). Also like this case, *Walker* purports to bring these claims on behalf of a class. *See id.* at ¶¶ 64–70. All of these claims in *Walker* were dismissed on the merits by Judge Wood last December. *See Walker v. City of Chicago*, No. 20-CV-1379, 2022 WL 17487813, at *3–*5 (N.D. Ill. Dec. 6, 2022). While the plaintiffs in *Walker* also assert additional claims, some of which were not dismissed, *see id.* at *5–11, Plaintiffs in this case do not bring those claims.

4

**LEGAL STANDARD**

A challenge to a plaintiff's standing is appropriately brought under Rule 12(b)(1) because it "tests the existence of jurisdictional facts underlying the allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). The plaintiff bears the burden of coming forward with competent proof that standing exists when there has been a factual attack on her standing. *Apex Dig., Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir 2009).

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Although the factual allegations in the complaint are accepted as true and reasonable inferences are drawn in plaintiff's favor, legal conclusions are not. *Iqbal*, 556 U.S. at 678–79.

**ARGUMENT**

I.     **All Of Goree's Claims Are Time Barred And O'Donnell's Illinois Takings Claim Is Time Barred.[1]**

Goree's takings claims and O'Donnell's Illinois takings claim are time barred, and therefore should be dismissed. The federal takings claims in Counts I and II must be brought under section 1983, *see Mogan v. City of Chicago*, No. 21 C 1846, 2022 WL 159732, at *8 n.4

---

[1] Courts can dismiss time-barred claims under Rule 12(b)(6) where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

5

(N.D. Ill. Jan. 18, 2022), and all section 1983 claims are subject to a two-year statute of limitations, *see Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016).

The Illinois takings claims in Count I are subject to a one-year statute of limitations. *See* 745 ILCS 10/8-101. *See also Strauss v. City of Chicago*, 2022 WL 4371555, at *12 (Ill. Sept. 22, 2022) ("the plain language of the [Tort Immunity] Act applies to claims for damages under the Illinois Constitution"); *Williams v. Forest Pres. Dist. of Cook Cty.*, No. 09 CV 7810, 2011 WL 6257301, at *1 (N.D. Ill. Dec. 14, 2011) ("[A]ny civil claim against a public entity in the state, including a claim under the Illinois constitution, is subject to a one-year statute of limitations.").

Here, Goree alleges that his vehicle was disposed of, at the latest, on April 19, 2018, dkt. 1, ¶ 61, triggering the accrual of his claims. Section 1983 claims begin to accrue when a plaintiff knows or has reason to know that his constitutional rights have been violated, *see Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992), and under Illinois law, a claim accrues when, "all elements are present and a party can invoke the aid of the court," *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 650 (7th Cir. 2003). This was the case as of April 19, 2018, the date of disposal, because disposal is the act that Plaintiffs contend constituted the taking. But this action was filed on February 27, 2023, nearly five years after that. Under the applicable two-year and one-year statutes of limitations described above, Goree's federal and Illinois constitutional claims in Count I and II are not timely. And while Count III brings unjust enrichment claims under state law, which are subject to a five-year limitations period, *see CitiMortgage, Inc. v. Parille*, 49 N.E.3d 869, 883 (Ill. App. Ct. 2016) (citing 735 ILCS 5/13–205), that claim falls away upon dismissal of Counts I and II as untimely because "there is no stand-alone claim for unjust enrichment" and thus no independent claim to which the unjust enrichment claim can be tied. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639,

6

648 (7th Cir. 2019); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1200 (Ill. App. Ct. 2008) ("[Unjust enrichment] is not a separate cause of action that, standing alone, would justify an action for recovery."). As to O'Donnell, he alleges that his vehicle was disposed of, at the latest, on July, 8, 2021, dkt. 1, ¶ 59, rendering his Illinois takings claim outside of the one-year statute of limitations. Therefore, this court should dismiss these time-barred claims and additionally dismiss Goree's unjust enrichment claim against the City because it cannot proceed alone.

## II.     Plaintiffs Fail To State A Takings Claim.

Vehicle ownership and operation has always been highly regulated — for decades, the City has impounded the vehicles of owners who commit multiple traffic or parking violations and do not pay their tickets after repeated attempts by the City to obtain payment. Yet plaintiffs claim that the City's enforcement program under section 9-100-120 constitutes an unconstitutional taking of their property for public use without compensation, in violation of the Fifth Amendment and Illinois Constitution. This claim fails as a matter of law because a taking does not arise where the government acquires property pursuant to a lawful exercise of authority other than the eminent domain power. That is the case here: The City impounds (and, if there is no appropriate response, disposes of) vehicles like Plaintiffs' not as an exercise of eminent domain, but instead as part of a graduated process of increasing enforcement measures designed to secure compliance with its driving and parking laws. The takings claim fails for the additional reason that the disposal of vehicles is not for a public use, because any disposal results from a vehicle owner's actions in committing multiple traffic or parking violations, not paying those tickets, and ignoring multiple notices and opportunities to pay the penalty for those infractions.

### A.     Plaintiffs' vehicles were impounded and disposed of pursuant to lawful government power other than eminent domain.

It is well established that "the government may not be required to compensate an owner

7

for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996). Thus, in *Bennis*, the Supreme Court held that there was no taking, and hence no compensation was due, when the government seized and obtained forfeiture of a vehicle used illegally. The Court explained that the forfeiture process was a lawful proceeding in which the property interest in the vehicle was transferred from the owner to the state, and that the owner's interest could be extinguished without constituting a taking. *See id.* at 452. The Court emphasized that this procedure is "too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced." *Id.* at 453.

Following *Bennis*, the D.C. Circuit applied this rationale to a municipal parking enforcement system nearly identical to the one presented here. *See Tate v. District of Columbia*, 627 F. 3d 904 (D.C. Cir. 2010). In *Tate*, the plaintiff's vehicle was booted and towed after she failed to pay three parking tickets. *Id.* at 906–07. After the vehicle remained unclaimed for 15 days, the city sent a notice informing the plaintiff that if she failed to claim her vehicle within a certain period, the vehicle would be disposed of. *Id.* She did not reclaim her vehicle and it was sold at auction. *Id.* The plaintiff then sued the city under a variety of theories, including a takings claim. The claim was dismissed by the district court, and the D.C. Circuit upheld the dismissal. Relying on *Bennis*, the D.C. Circuit explained that there was no takings claim because the city was acting under authority other than eminent domain. Specifically, the city's "practice of auctioning a vehicle when tickets go unpaid is the culmination of a sort of graduated forfeiture process," one which, like the forfeiture procedure in *Bennis*, is "firmly fixed" in remedial jurisprudence. *Id.* at 909 (quoting *Bennis*, 516 U.S. at 453).

In the same vein, last year in *Walker*, Judge Wood of this District dismissed the precise claim being brought here against the City's immobilization program. *Walker*, 2022 WL

17487813, at *4.  Relying on *Bennis* and *Tate*, Judge Wood concluded that "the City's vehicle forfeiture scheme does not, on its face, violate the Takings Clause.  The City was permitted to establish a 'regime of progressive penalties that culminates in the forfeiture of scofflaw vehicle owners' property rights" without violating the Takings Clause.'"  *Id.* (quoting *Robledo v. City of Chicago*, 778 F. Supp. 2d 887, 895 (N.D. Ill. 2011) (rejecting due process challenge to City's boot impoundment program)).[2]

This case is no different.  Plaintiffs' vehicles were impounded and disposed of not as an exercise of eminent domain, but as the last step in a graduated statutory process — the vehicle immobilization program set forth in section 9-100-120 — designed to enforce compliance with the City's parking and traffic laws.  As described in detail above, that process provides ample notice and hearing opportunities to owners when they are issued tickets, when their vehicle then becomes eligible for booting, when the vehicle then is actually booted, and when the vehicle is ultimately impounded.  Under the City's program, a vehicle owner's interest "is gradually eroded, and then ultimately extinguished, after he repeatedly violates the City's regulations and repeatedly fails to pay (or successfully to contest) the penalties associated with those violations."  *Robledo*, 778 F. Supp. 2d at 897.  Accordingly, Plaintiffs have no takings claim.

Anticipating this inevitable conclusion, Plaintiffs offer a legal argument that was considered and rejected in *Walker*: Plaintiffs argue that the City's program is not an exercise of the police power but rather an effort to collect revenue, and as such comes under the scope of the Takings Clause.  *See* Dkt. 1, ¶¶ 48, 50.  In support, Plaintiffs rely on the Seventh Circuit's

---

[2] Other courts have come out the same way when reviewing the impoundment of vehicles for unpaid tickets.  *See Missud v. California*, 2013 WL 450391, at *4 (N.D. Cal. Feb. 5, 2013), *aff'd*, 538 F. App'x 809 (9th Cir. 2013); *Deligiannis v. City of Anaheim*, 2010 WL 1444538, at *8 (C.D. Cal. Mar. 2, 2010), *aff'd*, 471 F. App'x 603 (9th Cir. 2012).

vacated decision in *In re Fulton*, 926 F.3d 916 (7th Cir. 2019), *vacated and remanded sub nom.*
*City of Chi. v. Fulton*, 141 S. Ct. 585 (2021).

*Fulton*, however, is far afield. Indeed, *Fulton* was not a takings case, nor did it otherwise
address the legality of the City's disposal of vehicles. Instead, it concerned vehicles that the City
was still holding until the owners paid their tickets, and the question was whether the City was
required by the Bankruptcy Code to release those vehicles when the owners petitioned for
bankruptcy. *Fulton*, 926 F.3d at 922. The owners argued that the City was violating the
automatic stay entered by operation of the Bankruptcy Code because the City was continuing to
"exercise control" over their vehicles rather than release them. *Id.* at 923–27. The City argued
that the terms of the automatic stay provisions did not apply, and even if they did, two exceptions
to the automatic stay under sections 362(b)(3) and 362(b)(4) of the Bankruptcy Code, 11 U.S.C.
§§ 362(b)(3), 362(b)(4), permitted the City to hold the vehicles. *Id.*

Plaintiffs invoke *Fulton*'s discussion of the second exception addressed by the court —
an exception in 11 U.S.C. § 362(b)(4) providing that a bankruptcy petition does not stay an
action or proceeding by a governmental unit to enforce that unit's "police and regulatory power."
The Court applied two tests developed in the caselaw for addressing the exception, and
ultimately concluded that, "on balance," the City's holding of a vehicle belonging to a
bankruptcy debtor "is an exercise of revenue collection more so than the police power." 926 F.
3d at 930.

As *Walker* concluded, *Fulton* did "not address the constitutional questions at issue here."
*Walker*, 2022 WL 17487813, at *4. Even more, *Fulton* did not conclude that the City was not
exercising its police powers. Just the opposite: it expressly acknowledged that the City was
exercising its police powers yet concluded, for purposes of the statutory test under the
Bankruptcy Code, that the City's revenue collection interests were "on balance" more prominent.

10

*Fulton*, 926 F.3d at 930. This is fatal to Plaintiffs' claim, for, as even they concede, "confiscation of property will not be considered a taking if the confiscation is a lawful exercise of that government's police powers." Dkt. 1, ¶ 73. *See also AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause.").

For these reasons, Plaintiffs' takings claims should be dismissed.

**B.      Plaintiffs' vehicles were not taken for public use.**

Plaintiffs' takings claims fail for a separate and independent reason — the vehicles were not taken for public use. The purpose of the Takings Clause is to "bar Government from forcing some people alone to bear public burdens which, in fairness and justice, should be borne by the public as a whole." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123–24 (1978). To state a takings claim, therefore, a plaintiff must show, among other things, that the government has taken his property for public use, such as when the government seizes real property to be used as a park or highway, s*ee Home Builders Ass'n of Greater Chicago v. City of Chicago*, 213 F. Supp. 3d 1019, 1028 (N.D. Ill. 2016). In such a case the property is taken not because of anything the property owner did, but rather because the public has need for the property.

This case is nothing like that. Plaintiffs' vehicles were seized under a program directed at particular individuals who flout the City's parking and traffic laws and, after extensive notice and hearing opportunities, fail to pay their tickets. It was those actions that initiated the progressive penalties under section 9-100-120, thereby causing the immobilization, impoundment, and disposal of those vehicles. Plaintiffs themselves allege that it was the failure to pay tickets that led to their vehicles being impounded and disposed of. Dkt. 1, ¶¶ 60, 62–63.

11

This does not implicate takings doctrine. The City's program seeks to induce compliance with its vehicle enforcement laws, not to acquire property for public use. As a matter of law and logic, Plaintiffs have not and cannot show that the City dispossessed them of their vehicles for public use.[3] The same logic applies here. The City did not take Plaintiffs' vehicles to repurpose them for a public use; indeed, Plaintiffs allege that the City disposed of them. That is not a public use under the Takings Clause. Plaintiffs' takings claims should therefore be dismissed for this separate reason.

C.     **Even if Plaintiffs had valid constitutional claims, their request for injunctive and declaratory relief should be dismissed.**

In Count I, Plaintiffs seek declaratory and injunctive relief for the alleged takings violations. That relief, however, is improper here even if the disposal of Plaintiffs' vehicles did amount to a constitutional violation because Plaintiffs lack standing for injunctive or declaratory relief.[4] To have standing to seek prospective injunctive relief, Plaintiffs "must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Similarly, to seek declaratory relief, "Plaintiffs do not have to await consummation of the injury, but the injury must, at the very least, be impending." *Tobin v. City of Peoria, Ill.*, 939 F. Supp. 628, 635 (C.D. Ill. 1996) (citing *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 296–98 (1979). Courts presume that people will conform their behavior to the law, and a plaintiff cannot

---

[3] Indeed, even confiscation of real property for failure to pay a government debt does not amount to a confiscation for public use. *See Balthazar v. Mari Ltd.*, 301 F. Supp. 103, 106 n.6 (N.D. Ill. 1969), *aff'd*, 396 U.S. 114 (1969) (government sale of owner's real property for failure to pay property taxes does not require just compensation because "[r]ather than taking private property for a public purpose, Illinois is here collecting taxes which are admittedly overdue").

[4] The Court in *Walker* determined that Plaintiff Walker had standing to pursue declaratory and injunctive relief. 2022 WL 17487812, at *8–9. The City disagrees with that conclusion, but that decision does not control the outcome as to the Plaintiffs' alleged circumstances in this action.

establish standing for injunctive and declaratory relief where one would have to presume that the plaintiff will break the law in the future. *See Tobin*, 939 F. Supp. 628 at 635; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

Plaintiffs do not allege, nor can they, that they face a real and immediate threat of having a vehicle disposed of in the future under section 9-100-120. Here, Plaintiffs' complained of injuries are wholly in the past, and they have not alleged that they are likely to fail to pay any ticket debt and subsequently have their vehicles disposed of. Even more, Plaintiff O'Donnell does not even allege he has another vehicle that would be impounded or disposed of, just that he fears he would be subject to impoundment if he did own a vehicle. Compl. ¶ 60. Standing is not established by "[g]eneral assertions or inferences" that Plaintiffs fear that their vehicles will be impounded again. *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). Any fear of having another vehicle disposed of in the future is not well founded because a future disposal would be preceded by waves of pre-impoundment notice and hearing opportunities described above (as well as opportunities to pay any outstanding debt in full or through payment plans), thus providing numerous entry points at which Plaintiffs could stave off disposal. The injuries Plaintiffs posit are therefore speculative, and they thus lack standing to seek injunctive relief. *See Santiago v. City of Chicago*, No. 19 C 4652, 2020 WL 6717516, at *6 (N.D. Ill. Nov. 15, 2020), *vacated and remanded on grounds not related to standing*, 19 F.4th 1010 (7th Cir. 2021), (holding that plaintiff who had vehicle impounded and disposed of lacked standing for injunctive relief because she had not established that she faced a real and immediate threat that another vehicle of hers would be towed or disposed of again). Because Plaintiffs articulate, at best, mere "speculative" claims of future impoundment risk, their declaratory judgment claims should be dismissed and their request for injunctive relief stricken.

13

**III.     This Court Should Dismiss The State Law Claims.**

If this Court dismisses the federal takings claims, it "may decline to exercise supplemental jurisdiction" over Plaintiffs' state law claims — the unjust enrichment claim against the City in Count III, as well as state-law taking claim in Count I.  28 U.S.C. § 1367I(3); *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 489 (7th Cir. 2012).

But the state law claims also fail on the merits for the same reasons that the federal takings claim fails.  The state-law takings claim in Count I is analyzed under the same standard as the federal takings claim, *see Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 57 N.E.3d 1229, 1234 (Ill. 2016), and so it fails for the same reasons as the federal claim.  As to the unjust enrichment claim in Count III, that claim is entirely derivative of the takings claim, and therefore should likewise be dismissed in light of dismissal of the takings claims, as *Walker* concluded.  2022 WL 17487813, at *7.  As explained above, "[u]nder Illinois law, there is no stand-alone claim for unjust enrichment.  Illinois courts describe it as a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence." *Benson*, 944 F.3d at 648 (citation and quotation marks omitted); *see also Mulligan*, 888 N.E.2d at 1200.  Where, as here, "the [unjust enrichment] claim rests on the same improper conduct alleged in another claim it will stand or fall with the related claim." *Krug v. Am. Family Mut. Ins. Co.*, 227 F. Supp. 3d 942, 946. (N.D. Ill. 2016).  That is, the failure to show a takings violation means that plaintiffs cannot show "that the defendant has unjustly retained a benefit to [their] detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

## CONCLUSION

For these reasons, the Court should dismiss the federal claims against the City with

14

prejudice for failure to state a claim and either relinquish jurisdiction over the state-law claims against the City or dismiss them with prejudice.

Date:   May 1, 2023                                         Respectfully submitted,

Andrew W. Worseck (IL 6256886)                    Acting Corporation Counsel for the City
andrew.worseck@cityofchicago.org                  of Chicago
John V. Casey (IL 6335663)
john.casey@cityofchicago.org                      By:    _s/ John V. Casey_
Aaron T. Dozeman (IL 6308909)                            Assistant Corporation Counsel
aaron.dozeman1@cityofchicago.org
(312) 744-7129 / 744-9018 / 742-0307
City of Chicago, Department of Law
2 North Lasalle Street, Suite 520
Chicago, Illinois 60602