**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RYAN O'DONNELL and MICHAEL GOREE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, and URT UNITED ROAD TOWING, INC. <br><br> Defendants. | ) <br> ) <br> ) <br> ) No. 23-cv-1192 <br> ) <br> ) Judge Andrea <br> ) Wood <br> ) <br> ) <br> ) <br> ) <br> ) |

Defendant URT UNITED ROAD TOWING, INC. ("URT"), by and through its attorneys Ross W. Bartolotta and Christian A. Sullivan of the law firm of SWANSON, MARTIN & BELL, LLP, submits its reply brief in support of its Motion to Dismiss the Plaintiffs' Complaint [Doc. 46 and 47].

**DEFENDANT URT UNITED ROAD TOWING, INC.'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

In this action, Plaintiffs assert the same takings challenge that was already rejected by this Court in *Walker v. City of Chicago*, No. 20 C 1379, 2022 WL 17487813, *3–*5 (N.D. Ill. Dec. 6, 2022). URT submits that the same reasoning applies here, and this matter should be dismissed for the same reasons. Indeed, the claims raised by the O'Donnell and Goree Plaintiffs are virtually identical to those claims raised by the other plaintiffs in *Walker*, with the sole exception that this case does not involve the allegation that the City of Chicago ("City") failed to provide statutory notice before disposing of the vehicles. *Id.* After review of the City's booting and impounding program in *Walker*, this Court found the disposal process did not constitute a taking because it was not an exercise of the eminent domain power, as it occurs at the tail end of an escalating

enforcement process, similar to a forfeiture proceeding, which requires no compensation under the takings clause. *Id.* The Plaintiffs' claims against URT are legally identical to those rejected in *Walker* and must be dismissed for the reasons articulated by this Court in that lawsuit.

Similarly, the remaining unjust enrichment claim fails because it cannot stand alone under Illinois law, apart from the incognizable taking claims. Nonetheless, the broad immunity outlined in 625 ILCS 5/4-213 precludes any remaining claim asserted against URT. Therefore, all claims alleged against URT must be dismissed, with prejudice.

## ARGUMENT

### I. Plaintiffs Fail to State a "Takings" Claim.

Plaintiffs attempt to avoid dismissal of their Complaint by arguing that URT was a "knowing and active participant in an unconstitutional practice" and a "moving force" behind the alleged constitutional violation. Their response is a carefully calculated attempt to avoid the application of this Court's decision on the identical issue in *Walker v. City of Chicago*, No. 20-CV-01379, 2022 WL 17487813, at *4 (N.D. Ill. Dec. 6, 2022).

In *Walker*, this Court made clear that the forfeiture scheme at issue does not constitute an unlawful taking. *Id*. at *8. A forfeiture system with gradual penalties does not violate due process and, therefore, is not a Takings Clause violation. Relying on the Supreme Court's decision in *Bennis v. Michigan*, 516 U.S. 442 (1996), which upheld a similar forfeiture scheme, the court explained the reasoning as follows:

> Applying *Bennis* here, this Court similarly concludes that the City's vehicle forfeiture scheme does not, on its face, violate the Takings Clause. The City was permitted to establish a "regime of progressive penalties that culminates in the forfeiture of scofflaw vehicle owners' property rights" without violating the Takings Clause.

> *Robledo*, 778 F. Supp. 2d at 895. Plaintiffs' argument to the contrary relies largely on the Seventh Circuit's decision in *In re Fulton*, 926 F.3d 916 (7th Cir.), *vacated and remanded sub nom. City of Chicago v. Fulton*, 141 S. Ct. 585 (2021), to argue that the City's towing of vehicles is not an exercise of police power. But that decision was subsequently vacated and the case remanded by the Supreme Court. And in any case, *In re Fulton* dealt with the exception to the automatic stay provision under Chapter 13 of the Bankruptcy Code found in 11 U.S.C. § 362(b)(4), which provides that the automatic stay does not reach some exercises of a government's police or regulatory power. *In re Fulton*, 926 F.3d 916, 927. It did not address the constitutional questions at issue here. For this reason, Plaintiffs have not stated a claim based on the facial challenge to the constitutionality of MCC § 9-100-120 in Count I and II.

*Walker v. City of Chicago,* No. 20-CV-01379, 2022 WL 17487813, at *8-9. Since there is no unconstitutional taking in this case for the reasons articulated in *Walker*, there is no need for this Court to address the conclusory assertion that URT was the "moving force" behind the purported constitutional violation.

In a further attempt to avoid the application of the *Walker* decision, Plaintiffs cite *Addante v. Vill. of Elmwood Park*, 541 F.Supp. 497 (N.D. Ill. 1982), which allowed a Section 1983 claim to proceed against a private tow company. However, *Addante* involved an alleged due process violation, which is not present here. The plaintiff in *Addante* asserted that his vehicle was seized by the village without any notice or hearing, which deprived him of due process. *Addante*, 541 F. Supp. at 498. The *Addante* decision is inapposite to this matter because there is no due process violation at issue. Rather, the Plaintiffs allege that the very nature of the statutory impoundment and disposal processes is an unconstitutional taking. (Doc. 1, Compl., ¶ 12). However, as this Court explained in *Walker,* the City is permitted to establish a regime of progressive penalties culminating in the forfeiture of scofflaw vehicle owners' property rights. *Walker,* No. 20-CV-

01379, 2022 WL 17487813, at *4 (N.D. Ill. Dec. 6, 2022). Consequently, the *Addante* decision does not support the conclusion that the forfeiture mechanism is unconstitutional taking.

Similarly, even if they could establish that the process at issue resulted in an unconstitutional taking, Plaintiffs have not demonstrated that URT was the "moving force" behind an unconstitutional taking. In response to the motion, Plaintiffs assert in conclusory fashion that the "whole purpose" of the arrangement between URT and the City was to deprive them of their property without compensation. Notably, Plaintiffs ignore the fact that URT had nothing to do with the forfeiture process they claim is unconstitutional. Likewise, URT was not responsible for the citation violations that led to the debt, the process established to challenge the violations and recover the vehicles, the determination as to which vehicles were subject to tow, or the sale of the vehicles by the City after seizure. Furthermore, URT was not even responsible for towing either of the Plaintiffs' vehicles in this case.[1] Again, the court's decision in *Walker* is instructive:

> The First Amended Complaint describes only the City, not URT, as the party responsible for disposing of Plaintiffs' vehicles and failing to provide adequate notice. (Am. Compl. ¶¶ 44–53, 57–60.) While Plaintiffs make the conclusory allegation that URT carries out the "entire regime—from the initial tow to the ultimate disposal of vehicles," the First Amended Complaint's allegations show clearly that URT is the purchaser, not the seller, of the vehicles at disposition. (*Id.* ¶¶ 55–59.) And Plaintiffs have identified no authority indicating that the purchaser of property taken by the state in violation of the Fifth Amendment has committed a constitutional violation. While Plaintiffs contend that the boot, tow, and scrap program was delegated to URT, their pleading does not plausibly

---

[1] As the Declaration of Jeffrey West establishes, URT was not involved with the towing of either vehicle. O'Donnell's vehicle was physically towed by a company named Victor's Towing, which is not affiliated with URT. Goree's vehicle was physically towed by TH Towing, which is not affiliated with URT. (*See* Declaration of Jeffrey West; Exh. 1)

establish that URT was responsible for the disposal of the vehicles (specifically, the sale of those vehicles from the City to URT) or, more importantly, for the notices sent to the vehicles' owners.

*Walker,* No. 20-CV-01379, 2022 WL 17487813, at *9.

These factual considerations are equally applicable here. Plaintiffs do not plead URT had anything to do with the forfeiture procedure leading to the disposition of vehicles, or that URT acted pursuant to a corporate policy or custom with the requisite culpability to cause a constitutional injury. The Complaint alleges that URT is a private towing contractor that performs vehicle tows for the City of Chicago, that URT is paid a fee by the City for conducting unpaid ticket tows, and if the City decides not to keep an unclaimed vehicle, the City will sell confiscated vehicles to URT at scrap value. (*See* Compl., ¶¶ 54-58. None of these actions amount to a constitutional violation under *Walker* and *Bennis* and, therefore, Plaintiffs do not sufficiently plead a viable *Monell*[2] claim against URT as a private corporation. *Walker,* No. 20-CV-01379, 2022 WL 17487813;*Bennis v. Michigan*, 516 U.S. 442 (1996),

Additionally, URT is not alleged to be involved with the City's policymaking, the City's issuance of tickets for parking or other violations, automated traffic and speed enforcement ordinances, adjudication proceedings, debt collection activities, the City's immobilization of vehicles, the City's decision to keep or scrap unclaimed vehicles, or the City choosing not to reduce or provide an offset to a person's debt with proceeds from the sale of a vehicle. Compl., ¶¶1-12; ¶¶ 21-42. Finally, as in *Walker*, the Plaintiffs have identified no authority indicating that the

---

[2] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

purchaser of property taken by the state in violation of the Fifth Amendment has committed a constitutional violation. *Walker,* No. 20-CV-01379, 2022 WL 17487813, at *9.[3] Therefore, despite the arguments and extraneous materials submitted in their response to URT's motion, the allegations in the Complaint simply do not support the notion that any URT policy was the "moving force" behind the constitutional violations asserted by the Plaintiffs.

A. URT's Conduct was Not Taken Under Color of Law

Plaintiffs further assert  that URT's towing of vehicles on the basis of City citations is "obviously a core public function." [Doc. 50, p. 3].  However, URT's conduct is not a "state action" and the Plaintiffs' pronouncement does not make it so. The Complaint alleges that the booting and impounding of the Plaintiffs' vehicles by the City has no law enforcement function or public safety goal pursuant to a law enforcement function or police powers, but "is just the act of a debt collector dressed up as a municipality."  *See* Compl., ¶¶ 31, 37, 40, 53, and 73.

Plaintiffs rely heavily on *Doe v. City of Chicago*, 39 F.Supp. 2d 1106 (N.D. Ill. 1999), in their effort to convince this Court that URT engaged in an activity that is traditionally the exclusive prerogative of the State, such that URT acted under color of law.  However, accepting Plaintiffs' argument would require the Court to find that any private entity hired by the City to tow a vehicle is acting under color of law. Such a holding would be impermissibly broad and contrary to established precedent. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (recognizing that an action by a private party pursuant to a state statute, without something more, was not sufficient to justify

---

[3] Plaintiffs' argument also ignores the fact that the City's ticket, towing and disposal process has been operating for many years before the City contracted with URT.  Therefore, URT cannot be the "moving force" behind the process.

characterization of that party as a 'state actor'). The Supreme Court declined to find an exclusive state function in *Blum v. Yaretsky*, 457 U.S. 991 (1982) (operation of a nursing home); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (education of children); and *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) (enforcement of statutory lien). *Id*.

Indeed, the Seventh Circuit has held that even the enforcement of criminal laws is not the exclusive prerogative of the city. *Wade v. Byles*, 83 F.3d 902, 906 (7th Cir. 1996). In *Wade*, the court held that a private security guard enforcing criminal laws of the state does not transform the private entity into a state actor: "Byles' function as a lobby security guard with the aforementioned limited powers is not traditionally the exclusive prerogative of the state." *Id.* at 906.

The nature of the conduct and relationship between URT and the City of Chicago is analogous to that of T-Force and the CHA in *Wade*. In *Wade*, the defendant was employed by a security company named T-Force that was under contract with the Chicago Housing Authority to provide security services for various CHA properties. *Id*. at 903. The Seventh Circuit applied the public function test and found the defendant was not a state actor nor acting under color of law. *Wade*, 83 F.3d at 906. The court determined that the CHA did delegate its entire police power to T-Force and concluded that the services provided by T-Force were similar to those services provided by private security guards to protect private property. *Id*. While the City may have contracted with URT in this case to provide towing services, towing is not a public function traditionally and exclusively reserved to the government, and cannot convert URT's conduct to state action.[4]

---

[4] Significantly, however and as previously noted, URT did not actually tow either of the Plaintiffs' vehicles in this case. *See* Declaration of Jeffrey West, Exh. 1.

Undeniably, the towing and impoundment of vehicles is not the exclusive prerogative of the City. Article 9 of the UCC empowers private entitles to repossess vehicles in the City, 810 ILCS 5/9-609, and Illinois law allows the impoundment of vehicles by various entities for the enforcement of chattel liens. *See* 770 ILCS 45/1. Therefore, it is inaccurate to claim that private parties are not allowed to tow and impound vehicles for various debts, and it is inaccurate to conclude that URT is carrying out functions that are the "exclusive prerogative" of the City merely because it is towing vehicles at the direction of the City and potentially purchasing vehicles disposed of by the City.

Once again, the court's holding in *Walker* is instructive and it shows that the allegations of state action are not sufficient, and irrelevant in any event, as the Plaintiffs cannot establish an unconstitutional taking.  The *Walker* court reasoned as follows:

> A tow company may act under color of state law when it tows and impounds vehicles on behalf of a city. *See Doe v. City of Chicago*, 39 F. Supp. 2d 1106, 1112 (N.D. Ill. 1999); *see also Stypmann v. City & Cty. of San Francisco*, 557 F.2d 1338, 1341 (9th Cir. 1977) (holding that towing and impoundment of vehicle by towing company was state action pursuant to 42 U.S.C. § 1983, but not discussing issues of notice or disposal of impounded vehicles). To be liable here, however, URT must be the "moving force" behind the violations. As pleaded, URT is implicated only in the towing and impoundment of the vehicles, and Plaintiffs do not adequately allege that the towing and impoundment, standing alone, violated the Takings Clause. The parties debate whether URT's actions were "under color of law," but the Court need not reach this issue because Plaintiffs have no plausibly alleged that URT was the moving force of the violations.

*Walker v. City of Chicago,* No. 20-CV-01379, 2022 WL 17487813, at *9–10. Thus, URT was not acting under color of law to allow an action predicated under Section 1983.

Moreover, a State "can be held responsible for a private decision only when it has exercised coercive power, or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357-58 (1974). "The simple fact that a private entity performs a function that serves the public does not transform its conduct into state action." *Wade v. Byles,* 83 F.3d 902, 905 (7th Cir. 1996) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)).

URT is not an actor under color of law because its services were performed pursuant to a contract with Chicago and its services are performed for the public's benefit - collecting a public debt. There are no facts that support an assertion the City exercised coercive power over decisions made by URT such that the decisions of URT were no longer decisions of a private actor. URT is only alleged to have the limited involvement of towing the vehicles and then purchasing vehicles the City decides not to keep; there is no assertion that URT utilized aid from, or used public employees, to enforce state laws. (Compl., ¶¶ 8, 54-55).

The Plaintiffs' argument based on *Doe* is therefore distinguishable and irrelevant because they have not and cannot allege an unconstitutional taking in any event. *Walker v. City of Chicago*, 20-CV-1379 (N.D. Ill.), Judge Wood Memorandum Opinion and Order, Doc. 87, December 6, 2022. As a result, Plaintiffs fail to state a claim against URT in Counts I and II of the Complaint based on their challenges to the constitutionality of MCC 9-100-120. *See* also *Bennis v. Michigan*, 516 U.S. 442 (1996), *Tate v. D.C.*, 627 F.3d 904, 906 (D.C. Cir. 2010); *Robeldo v. City of Chicago*,

778 F. Supp. 2d 887, 899 (N.D. Ill. 2011), and *AmeriSource v. U.S.* , 525 F.3d 1149, 1153 (Fed. Cir. 2008).

B. <u>Plaintiff's Request for Injunctive and Declaratory Relief Fail for Lack of Standing and Subject Matter Jurisdiction and Must be Dismissed.</u>

URT has adopted the arguments made by the City of Chicago on pages 12 through 14 of its Memorandum, which concisely explains why Plaintiffs' claim for declaratory and injunctive relief for the "takings violations" are speculative, and reveals why they lack standing to seek injunctive relief. (*See* City of Chicago Memorandum, Doc. 20, pp. 12-13). URT also adopts the City's reply in support of these arguments in Document 41, as well as the standing arguments raised by the City in Document 50.

Moreover, Plaintiffs are not entitled to injunctive relief against URT because they cannot establish that URT can cause imminent harm. URT is not in control of the City's decision whether or not to tow and dispose of a vehicle pursuant to City ordinance. Nothing in the Plaintiffs' response refutes this fact. Similarly, Plaintiff's claim that he is "in fear of obtaining a new vehicle" is speculative and does not constitute "imminent harm" to satisfy standing requirements. (Compl, ¶ 60). Any remining state law cause of action for unjust enrichment, constitutional violation, or for declaratory relief is not a viable supplemental claim and must be dismissed.

III. **O'Donnell's  Illinois State Law Claim of Unjust Enrichment in Count IV Fails and Must be Dismissed.**

In Count IV, Plaintiff O'Donnell asserts an unjust enrichment claim against URT based upon the alleged takings that form the basis for Counts I and II; URT's conduct allegedly violates the fundamental principles or justice, equity, and good conscience. Plaintiffs' argument derives entirely from the purported unconstitutional taking. (Resp., p. 9). O'Donnell claims that URT

received a benefit from the City, even though Plaintiff recognizes that it was the City that disposed of the Plaintiff's vehicle, and the City that sold certain confiscated vehicles to URT for scrap rates through a contractual agreement. [MCC 9-92-80; 9-100-020; 9-100-50; 9-100-100; 9-102-20; 9-92-100; 9-100-120; and 9-100-160]. (*See* Compl. ¶¶1-12, 21-42, 54-59, and 87-91). Therefore, if the constitutional claim fails, so does the "wrongful conduct" that Plaintiffs allege was sufficient to undergird a claim for unjust enrichment.

A.  Count IV Fails to Plausibly Establish that URT Unjustly Retained a Benefit from the Plaintiff, O'Donnell.

Plaintiff must show that URT "unjustly retained" a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Siegel v. Shell Oil Co*., 612 F.3d 932, 927 (7th Cir. 2010) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Here, O'Donnell alleges that URT procured the benefit through wrongful conduct. The claim rests entirely upon the assertion that the City's statutory ticket and tow mechanism is unconstitutional. (Compl., ¶ 88). However, the Complaint does not allege or contain any factual matter that plausibly supports a claim for unjust enrichment against URT. URT merely complied with its contractual obligations with the City.

URT did not unjustly retain any benefit from the Plaintiff. URT did not dispose of the Plaintiff's vehicle (or even tow the Plaintiff's vehicle) and the Complaint does not allege URT disposed his vehicle. (*See* Compl. ¶¶ 1-12, 21-42, 59). Rather, the Plaintiff alleges the City's disposal of the vehicle without just compensation is the benefit the City retained to the detriment of the Plaintiff. (*See* Compl. ¶ 8, 9, 12, 59). The Plaintiffs cannot allege URT retained the same

benefit that the City retained when URT did not dispose of the Plaintiff's vehicle. Plaintiff's relief, if any, lies with the City.

Moreover, Plaintiff has not alleged entitlement to any benefit URT may have received by merely complying with its contract and the law. Even under the "wrongful conduct" circumstance, Plaintiff must show some entitlement to the "wrongful" benefit allegedly enjoyed by URT, which he has not done. *Cement-Lock v. Gas Tech. Inst.,* 523 F. Supp. 2d 827, 863 (N.D. Ill. 2007). Plaintiff has alleged nothing more than that he incurred violations by failing to comply with the law, which led to the vehicle forfeiture under a process already determined to be constitutional. *Walker*, 20-CV-01379, 2022 WL 17487813, at *4 (citing *Robledo v. City of Chicago*, 778 F. Supp. 2d 887, 899 (N.D. Ill. 2011)). It was *Plaintiff's* failure to act in response to the City's concededly legitimate exercise of authority that ultimately eviscerated his property interest, which has nothing to do with URT. Consequently, Plaintiff has not shown that URT committed any wrongful conduct, or that he is entitled to a benefit wrongly retained by URT. Simply put, O'Donnell fails to state an unjust enrichment claim against defendant URT because there is no plausible underlying cause of action against URT that legally defines URT's conduct as unlawful or improper.

B.     The Unjust Enrichment Claim Cannot Survive Independent of the Constitutional Claim.

In response to URT's motion, Plaintiff O'Donnell argues that the loss of the value of his vehicle is connected to the payment scheme of URT such that the unjust enrichment claim cannot be dismissed, and that the *Walker* and *Lacy* decisions are irrelevant to the unjust enrichment claim.

In making this argument, Plaintiff repeats the erroneous assertion that URT's conduct was somehow the "moving force" behind the transfer of the value of Plaintiff's vehicle to URT. (Resp.

Page **12** of **15**

Br. [Doc. 50], p. 11). However, Plaintiff ignores the fact that there can be no stand-alone unjust enrichment claim as a matter of law. As the court in *Lacy* recognized, in Illinois, unjust enrichment is a "request for relief" that is "tied to the fate of" an independent cause of action. *Lacy v. City of Chicago,* No. 21-CV-06783, 2024 WL 1376211, at *11 (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019)). Instead, "an unjust enrichment claim will stand or fall with related claims founded on the same improper conduct." *Id.*

Since there was no valid takings claim asserted by the Plaintiff, as articulated by the court in *Walker*, the unjust enrichment claim necessarily falls as well. *Walker*, 2022 WL 17487813, at *10. Just as in *Lacy*, the Plaintiff cannot save his unjust enrichment claim against URT by attempting to piggyback onto the failed takings claim asserted against the City. Since there is no standalone claim for unjust enrichment in Illinois, URT's motion to dismiss must be granted.

> C. The Unjust Enrichment Claim Fails to Plausibly Establish that URT Violated the Fundamental Principles of Justice, Equity, and Good Conscience, and URT is Protected by Statutory Immunity Against the State Law Claim.

In response to URT's motion, Plaintiff argues that "the scandalously low amounts URT paid" for the vehicles after the City decided to sell them for scrap value are the "whole problem." (Resp. Br., [Doc. 50], p. 9). However, this argument ignores the fact that the applicable statute actually requires such vehicles to be sold to an "automotive parts recycler, rebuilder or scrap processor." 625 Ill. Comp. Stat. Ann. 5/4-208(a). URT's purchase of disposed of vehicles from the City for the scrap value of the vehicles clearly does not violate the fundamental principles of justice, equity, and good conscience, nor do the allegations in the Complaint contain sufficient factual matter that allows this Court to draw any such conclusion.

As explained by this Court in *Walker,* the Plaintiffs' vehicles were towed and impounded by the City under a constitutional process due to the Plaintiffs' numerous violations of the City's traffic laws, and the subsequent failure to timely pay the fines imposed as a consequence. The City disposed of the Plaintiff's vehicle pursuant to 625 ILCS 5/4-208 of the Vehicle Code. The mere application of a constitutional statutory process for the disposal of abandoned vehicles does not equate to wrongful conduct that shocks the conscious to such an extent that the Plaintiff can state a claim for unjust enrichment.[5]  As such, URT's motion should be granted as to Count IV.

Nonetheless, URT has statutory immunity from the unjust enrichment claim, as plainly articulated in the applicable statute.  Section 5/4-213(a) of the Illinois Vehicle Code states:

> A law enforcement officer or agency, a department of municipal government designated under Section 4-212.1 or its officers or employees, or a towing service owner, operator, or employee shall not be held to answer or be liable for damages in any action brought by the registered owner, former registered owner, or his legal representative, lienholder or any other person legally entitled to the possession of a vehicle when the vehicle was processed and sold or disposed of as provided by this Chapter. *Id.*

In his attempt to avoid the plain application of this statute, Plaintiff cites *Addante*, a 1982 decision which does not address the immunity provision or the vehicle disposition scheme at issue. Therefore, *Addante* is irrelevant to URT's argument. Nonetheless, the facts in *Addante* are wildly divergent from this matter because *Addante* involved the Village of Elmwood Park's failure to provide notice of the vehicle's impending disposition. There is no such allegation here.

Plaintiff further argues that Section 5/4-213 only provides immunity for "damages." (Resp., Br., p. 12). However, he misreads the statute, which actually says that towing service

---

[5] Incidentally, Plaintiffs' allegations of obscene profit for URT are not well pled, (Compl., ¶¶ 56-58), as the Declaration of Jeffery West establishes that URT sold the O'Donnell vehicle for only $515. (Exh. 1).

Page **14** of **15**

entities shall not be "held to *answer <u>or</u> be liable for damages* in any action brought by the registered owner . . . ." 625 ILCS 5/4-213 (emphasis added). The use of the word "or" connotes protection from more than just actions for damages, and the word "action" clearly encompasses the civil action filed against URT, including the purported claim for unjust enrichment.

Likewise, the citation to *Raintree Homes v. Village of Long Grove*, 209 Ill.2d 248, 255 (2004), does not aid the Plaintiff because the court interpreted a completely different statute, which specifically excluded from statutory immunity "the right to obtain relief other than damages." *Id.* Consequently, the Plaintiff has presented no authority to preclude the application of statutory immunity to the unjust enrichment claim. Since URT is statutorily immune from the Plaintiff's unjust enrichment claim pursuant to 625 ILCS 5/4-213, Count IV must be dismissed.

## CONCLUSION

For the foregoing reasons, Counts I, II, and IV of the Complaint should be dismissed, with prejudice against URT United Road Towing, Inc., with prejudice.

Dated: July 12, 2024        Respectfully submitted,

**URT UNITED ROAD TOWING, INC.**

By:    /s/ *Ross W. Bartolotta and Christian A. Sullivan*
Attorneys for URT United Road Towing, Inc.
**SWANSON, MARTIN & BELL, LLP**
2525 Cabot Drive, Suite 204, Lisle, IL 60532
(630) 799-6960 and (630) 799-6970