IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN O'DONNELL, et al., | ) |
| Plaintiffs, | ) |
| | ) No. 23-cv-01192 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) |
| Defendants. | ) |

**ORDER**

For the reasons stated in the accompanying Statement, Defendant City of Chicago's motion to dismiss for lack of standing [51] is denied and its motion to dismiss for failure to state a claim [19] is granted. Defendant URT United Road Towing, Inc.'s motion to dismiss [46] is also granted. Plaintiffs' motion for leave to file a sur-reply [42] is denied as moot. Telephonic status hearing set for 10/15/2024 [56] remains firm.

**STATEMENT**

Plaintiffs Ryan O'Donnell and Michael Goree failed to pay traffic ticket fines each owed to Defendant City of Chicago ("City") and, as a result, their respective vehicles were towed, impounded, and ultimately sold to Defendant URT United Road Towing, Inc. ("URT") for well below market value. Moreover, Plaintiffs did not receive payment or credit against their debts as a result of the sales. Plaintiffs contend that the City's practices around disposing of impounded vehicles violate the Fifth Amendment's Takings Clause, as well as Illinois constitutional and state law. For that reason, they have brought this putative class action against the City and URT to obtain injunctive and declaratory relief as well as damages. The City and URT each have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 19, 46), and the City has filed an additional motion to dismiss pursuant to Rule 12(b)(1) (Dkt. No. 51). For the reasons that follow, Defendants' Rule 12(b)(6) motions are granted while the City's Rule 12(b)(1) motion is denied.

**I.**

For the purposes of Defendants' motions to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Plaintiffs. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint alleges as follows.

Each year, the City tows and impounds tens of thousands of vehicles because of unpaid traffic ticket debt. (Compl. ¶¶ 1–2, Dkt. No. 1.) Pursuant to the Municipal Code of Chicago

("MCC"), when vehicle owners have two tickets that are unpaid for more than a year or three tickets that are unpaid at any time, the owners are subject to a series of escalating enforcement actions. (*Id.* ¶ 2.) The City begins by immobilizing, or "booting," the car. (*Id.* ¶ 3.) Prior to 2019, the vehicle's owner had 24 hours after their vehicle's immobilization to pay their outstanding ticket debt and associated fees, or else their vehicle would be towed and impounded. (*Id.* ¶ 3 & n.3.) In 2019, the City amended the MCC to permit vehicle owners to obtain release of their immobilized vehicle by making a downpayment on their debt and entering into a payment plan with respect to the remaining sum. (*Id.*) Next, the City tows and impounds the car, adding a $150 tow fee and daily fees of $20 to $35 for storage. (*Id.* ¶ 5.) If the owner does not timely pay the balance (or enter into a payment plan), the City takes possession of the vehicle and can add it to its fleet, auction it off, or sell it for scrap. (*Id.* ¶ 8.) Typically, the City sells the car for scrap for around $200. (*Id.*) The owner receives no compensation or credit against their debt for the disposition of their vehicle. (*Id.* ¶ 9.)

Plaintiffs allege that the purpose of this enforcement scheme is to collect debts owed to the City. (*Id.* ¶¶ 22, 37.) While the underlying municipal ordinance describes its purpose as to "enforce[e] the parking, standing, compliance, [and automated traffic and speed enforcement system] ordinances of the traffic code," the City only tows cars after a finding of liability has been entered and fines and penalties have been assessed. MCC section 9-100-120(a)–(b). Unpaid ticket tows are administered by the City Comptroller's Department of Finance, not by the Department of Streets and Sanitation or the Police Department. (Compl. ¶ 34.) The City received around $4 million for selling scrapped vehicles in 2017 and an additional $10 million in boot and storage fees. (*Id.* ¶ 38.) The threat of the accelerating penalties also helped the City to collect around $345 million in fines and penalties in 2018—nine percent of its total operating revenue. (*Id.*)

The City contracts with URT to provide towing and automobile pound management services. (*Id.* ¶¶ 16, 54.) As a contractor, URT is responsible for every step of the process between the initial tow and disposal of unclaimed vehicles (*Id.* ¶ 58.) When a vehicle's owner cannot afford to pay for its release, or the vehicle otherwise goes unclaimed, the City often sells it to URT at scrap value. (*Id.* ¶¶ 55–56.)

Plaintiff O'Donnell had his vehicle towed and impounded by URT on behalf of the City on May 19, 2021. (*Id.* ¶ 59.) Shortly thereafter, the City sold O'Donnell's vehicle to URT for $273, providing no compensation to O'Donnell (or offset to his debt) and offering him no opportunity to determine fair compensation for his vehicle. (*Id.*) Similarly, URT towed Plaintiff Goree's vehicle on behalf of the City on January 28, 2018, and then relinquished possession of the vehicle to its lienholder who sold it. (*Id.* ¶ 61.) Notably, Goree claims that his vehicle was towed, impounded, and disposed not as a result of any citation issued against him but instead due to the ticket debt that the co-signor to the vehicle had accumulated on a different vehicle. (*Id.* ¶ 62.)

According to Plaintiffs, the MCC's vehicle forfeiture scheme is facially unconstitutional under the Takings Clause of the Fifth Amendment to the U.S. Constitution as well as the corresponding provision of the Illinois Constitution. In their complaint, Plaintiffs assert four claims on behalf of themselves and a putative class. Count I of the complaint seeks declaratory and injunctive relief for Defendants' alleged taking and disposal of vehicles in violation of the U.S. and Illinois constitutions, while Count II asserts a Takings Clause claim for damages against

Defendants pursuant to 42 U.S.C. § 1983. And Counts III and IV assert Illinois state-law claims for unjust enrichment against the City and URT, respectively.

## II.

Before addressing the Rule 12(b)(6) motions brought by both Defendants, the Court begins by addressing the City's separate Rule 12(b)(1) motion arguing that Plaintiffs lack standing to challenge a certain aspect of the City's vehicle forfeiture scheme. In particular, the complaint alleges that the City has a practice of towing, impounding, and disposing not just the vehicle that accrued the unpaid ticket debt but also any other vehicles owned by the owner of the ticketed vehicle. (*E.g.*, Compl. ¶ 33 ("Moreover, unpaid ticket tows do not even target the vehicle that was used in a particular infraction. Instead, any and all vehicles owned by a person with unpaid tickets under MCC § 9-100-120 are eligible to be towed and sold.").) Yet the City notes that the complaint does not allege that O'Donnell's towed and disposed-of vehicle was not the vehicle to which the unpaid tickets were issued. And while Goree does allege that his vehicle was towed due to tickets issued against a different vehicle owned by the co-owner of his vehicle, the City comes forward with evidence contradicting that allegation. According to the City, because neither Plaintiff was injured by the City's purported practice of towing vehicles other than those that accrued the unpaid ticket debt, they lack standing to attack that practice.

Even accepting as true that Plaintiffs' towed vehicles were the ticketed vehicles, that has no impact on Plaintiffs' standing. The City's standing argument fails to account for the fact that Plaintiffs raise a facial challenge to the constitutionality of the MCC's vehicle forfeiture scheme. (*Id.* ¶ 75 (MCC § 9-100-120, **on its face**, violates the Takings Clause of the United States and Illinois Constitutions." (emphasis added)).) "In a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant." *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011); *see also City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) ("When asserting a facial challenge, a party seeks to vindicate not only his own rights, but those of others who may be adversely impacted by the statute in question."). Because Plaintiffs unquestionably had their vehicles towed pursuant to the scheme set out at MCC section 9-100-120, they have standing to challenge its constitutionality in all applications. The City's Rule 12(b)(1) motion is therefore denied.

## III.

Having rejected the standing challenge, the Court considers the viability of Plaintiffs' claims. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Counts I and II of Plaintiffs' complaint allege that MCC section 9-100-120's vehicle forfeiture scheme effects a taking without just compensation and is therefore facially unconstitutional under the Fifth Amendment to the U.S. Constitution as well under Illinois's constitution.[1] The Fifth Amendment's Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Accordingly, "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). To state a claim for a violation of the Takings Clause, a plaintiff must allege "(1) that the governmental entity 'took' his property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation." *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021).[2]

This Court has already rejected an identical constitutional challenge to MCC section 9-100-120 in *Walker v. City of Chicago*, No. 20-cv-01379, 2022 WL 17487813 (N.D. Ill. Dec. 6, 2022). There, consistent with the Supreme Court's ruling in *United States v. Bennis*, 516 U.S. 442 (1996), this Court found that the City's legislative scheme for disposing of impounded vehicles was not facially unconstitutional. *Walker*, 2022 WL 17487813, at *4. *Bennis* recognized that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452. And, in *Walker*, this Court found that the City's vehicle forfeiture scheme was not facially unconstitutional under the Takings Clause because it constituted the type of forfeiture process that *Bennis* determined was "firmly fixed in the punitive and remedial jurisprudence of the country." *Id.* at *4 (citing *Bennis*, 516 U.S. at 453).

While Plaintiffs acknowledge that this Court's holding in *Walker* applies to and is dispositive of their constitutional claims, they insist that *Walker* was wrongly decided. Plaintiffs largely rehash the arguments that the Court considered and rejected in *Walker* and fail to convince the Court that it should reconsider that decision. One new argument they raise relies on a Supreme Court case, *Tyler v. Hennepin County*, 598 U.S. 631 (2023), that was decided after this Court's *Walker* decision. There, the Supreme Court held that the defendant county could sell the plaintiff's home "to recover unpaid property taxes" but "could not use the toehold of the tax debt to confiscate more property than was due;" *i.e.*, the county could not keep for itself the amount in excess of the plaintiff's tax debt after selling her home. *Id.* at 639. Plaintiffs liken the facts in *Tyler* to those here, arguing that the City confiscates and sells property worth far more than the unpaid debt accrued. But *Tyler* is inapposite because its holding was rooted in "[t]he principle that a government may not take more from a taxpayer than she owes," which dates back to the Magna Carta. *Id.* By contrast, this Court's decision in *Walker* had entirely different foundation in the

---

[1] Plaintiffs' claims under Article 1, Section 15 of the Illinois Constitution (prohibiting takings without just compensation) are evaluated in lockstep with the federal Takings Clause. *See Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 57 N.E.3d 1229, 1234 (Ill. 2016) (Illinois Takings Clause analyzed under same standard as federal Takings Clause, except that Illinois clause also protects against damage to property).

[2] The Takings Clause was incorporated against the States by the Fourteenth Amendment. *Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (2005).

country's punitive and remedial jurisprudence. *See Bennis*, 516 U.S. at 452 ("Forfeiture of property prevents illegal uses both by preventing further illicit use of the property and by imposing an economic penalty, thereby rendering illegal behavior unprofitable." (internal quotation marks omitted)).

Because this Court continues to adhere to its analysis in *Walker*, the Takings Clause claims at Counts I and II are dismissed.[3]  Further, the Illinois law unjust enrichment claims at Counts III and IV are also dismissed. "Under Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Consequently, "an unjust enrichment claim will stand or fall with related claims founded on the same improper conduct." *Anderson v. Rush Street Gaming, LLC*, No. 1:20-cv-04794, 2021 WL 4439411, at *7 (N.D. Ill. Sept. 28, 2021). Plaintiffs' unjust enrichment claims are predicated on the same conduct as the takings claims and they necessarily fail.

## IV.

For the foregoing reasons, the City and URT's Rule 12(b)(6) motions are granted, and the City's Rule 12(b)(1) motion (Dkt. No. 51) is denied. Plaintiffs' complaint is dismissed without prejudice.

Dated: September 28, 2024

_____
Andrea R. Wood
United States District Judge

---

[3] The City's Rule 12(b)(6) motion includes an argument that certain of Plaintiffs' claims must be dismissed as time-barred. That statute of limitations argument led Plaintiffs to file a motion for leave to file a sur-reply to the City's Rule 12(b)(6) motion. (Dkt. No. 42.) The City's statute of limitations argument turns on a question concerning the applicability of the tolling rule of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) to the circumstances here. The Seventh Circuit has not yet answered that particular question and it has divided other Circuits. *See In re Turkey Antitrust Litig.*, No. 19 C 8318, 2024 WL 3848560, at *2 (N.D. Ill. Aug. 16, 2024) (discussing the competing Circuit court decisions). Having found that Plaintiffs' allegations fail to plead a viable claim, however, the Court need not resolve the statute of limitations issue. Accordingly, Plaintiffs' motion for leave to file a sur-reply is denied as moot.