CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 24-2946

RYAN O'DONNELL and MICHAEL GOREE,
individually and on behalf of all others
similarly situated,

                              *Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO and URT UNITED
ROAD TOWING, INC.,

                              *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-01192 — **Andrea R. Wood**, *Judge*.

_____

ARGUED SEPTEMBER 3, 2025 — DECIDED DECEMBER 22, 2025

_____

Before SCUDDER, KIRSCH, and PRYOR, *Circuit Judges*.

KIRSCH, *Circuit Judge*. The City of Chicago may immobilize, tow, impound, and ultimately dispose of vehicles to enforce compliance with its traffic code. The City disposed of Ryan O'Donnell's and Michael Goree's vehicles pursuant to this graduated forfeiture scheme, without compensating

Case: 1:23-cv-01192 Document #: 75 Filed: 01/13/26 Page 2 of 8 PageID #:936
Case: 24-2946   Document: 00714683716   Filed: 01/13/2026   Pages: 8

2                                                          No. 24-2946

them. O'Donnell and Goree then filed a putative class action against the City and URT United Road Towing, Inc., a towing company that works for the City. They alleged that the City's forfeiture scheme is facially unconstitutional under the Fifth Amendment's Takings Clause and the Illinois constitution and brought a state-law unjust enrichment claim. The district court granted the defendants' motions to dismiss for failure to state a claim. Because that court correctly determined that vehicle forfeiture pursuant to the City's traffic code is not a taking, we affirm.

I

After receiving a ticket in Chicago, a vehicle owner must pay in full, enter into an installment payment plan, or contest the violation. Municipal Code of Chicago (MCC) § 9-100-050. If the owner fails to pay or successfully contest the violation, the City of Chicago sends a notice of final determination of liability. *Id.* § 9-100-100. If a vehicle owner accumulates three or more final determinations of liability, or two final determinations that are over a year old, all vehicles registered to that owner become eligible for immobilization. *Id.* § 9-100-120(b). The City sends a notice of impending vehicle immobilization and the owner has 21 days from the date of notice to pay the amount due or request a hearing. *Id.* If no action is taken, the City places all vehicles registered to the owner on an immobilization list. *Id.*

After a vehicle is immobilized, the owner has 24 hours to pay the amount due, enter into an installment payment plan, participate in a relief program, or request additional time to comply. *Id.* § 9-100-120(c)–(d). Otherwise, the City may tow and impound the vehicle. *Id.* URT United Road Towing, Inc. (URT) is a private contractor that tows such vehicles for the

No. 24-2946 3

City. Once a car is impounded, the City sends an additional notice and the owner has 21 days from that date to pay the fees and claim the vehicle or request an extension. *Id.* § 9-100-120(f). The owner may also request an administrative hearing to determine whether the immobilization or towing was erroneous. *Id.* § 9-100-120(e). If, however, the vehicle remains unclaimed, the City may sell or dispose of it. *Id.* § 9-100-120(f). Some of these unclaimed vehicles are sold to URT at scrap value.

In 2018 and 2021, respectively, the City disposed of vehicles owned by Michael Goree and Ryan O'Donnell according to the graduated forfeiture scheme set forth in § 9-100-120. It sold O'Donnell's vehicle to URT at scrap value and relinquished Goree's to the lienholder. The City did not compensate O'Donnell or Goree after it disposed of their cars, nor did it use any of the proceeds to offset their unpaid ticket debt.

O'Donnell and Goree filed a putative class action against the City and URT, alleging a facial violation of the Fifth Amendment's Takings Clause, a *Monell* claim against URT, and state-law claims. The City and URT moved to dismiss the complaint for failure to state a claim. The district court granted the defendants' motions and dismissed all claims, finding that the City's graduated forfeiture scheme was not a taking.

II

We review de novo a district court's dismissal for failure to state a claim, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiffs' favor. We first address the plaintiffs' takings claims. Because those fail, their remaining claims do as well.

The same standard applies to the plaintiffs' takings claims under the federal and Illinois constitutions, so we analyze those claims together. See *Hampton v. Metro. Water Reclamation Dist.*, 57 N.E.3d 1229, 1235–36 (Ill. 2016). The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property shall not be taken "for public use, without just compensation." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (citation modified). To establish a violation of the Takings Clause, plaintiffs must show that: (i) the government took their property, either through a physical taking, or through unduly onerous regulations; (ii) the taking was for a public use; and (iii) no matter what type of property (real or personal) was taken, the government has not paid just compensation. *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021) (citation modified).

Because O'Donnell and Goree challenge § 9-100-120 as facially unconstitutional, they must show that the "mere enactment" of § 9-100-120 constitutes a taking. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987). They cannot.

In *Hadley v. City of South Bend*, 154 F.4th 549, 554 (7th Cir. 2025), we considered a takings claim that—like this one—arose from a state's exercise of its police power rather than eminent domain. Eminent domain traditionally refers to "a state's power to physically take property by formally condemning it." *Id.* The police power, conversely, refers to "a state's general authority to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety." *Id.* (citation modified). As we acknowledged in *Hadley*, the takings

analysis doesn't draw "rigid distinctions between eminent domain and police power actions," and every police power action may not bar a takings claim. *Id.* at 554–56 (citation modified). Nonetheless, we regarded the exercise of law enforcement authority as a "classic example" of police power that does foreclose takings claims. *Id.* at 556.

Applying that principle here, immobilizing, towing, impounding, and—if necessary—disposing of vehicles under § 9-100-120 is an exercise of the City's police power to enforce its traffic code, and thus isn't a taking. The purpose of the forfeiture scheme is to target individuals who—by refusing to pay—have hitherto evaded punishment for their traffic and parking infractions. Instead of continuing to issue unanswered tickets, the City institutes a different form of punishment: hindering offenders' ability to drive by immobilizing, impounding, and potentially even disposing of their vehicles. Without this graduated forfeiture scheme, vehicle owners who repeatedly violate the traffic code could evade punishment. The threat of impoundment and disposal forces them to internalize the consequences of their behavior and, accordingly, deters those violations in the first place. See *Tate v. District of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010). Because § 9-100-120's function is to enforce the City's traffic code, it's the kind of law enforcement forfeiture scheme "firmly fixed in the punitive and remedial jurisprudence of the country" and does not constitute a taking. See *id.* (quoting *Bennis v. Michigan*, 516 U.S. 442, 453 (1996)) (finding that a scheme similar to the one here didn't constitute a taking).

The plaintiffs' arguments to the contrary aren't persuasive. Their primary contention is that § 9-100-120 is a debt-collection mechanism that punishes the inability to pay and is

not a law enforcement measure. The plaintiffs rely, in part, on *In re Fulton*, 926 F.3d 916 (7th Cir. 2019), vacated and remanded on other grounds sub nom., *City of Chicago v. Fulton*, 592 U.S. 154 (2021), where we described § 9-100-120 as "an exercise of revenue collection more so than police power." *Id.* at 929–30. But *Fulton* was a bankruptcy case, not a takings case, and did not conclude that § 9-100-120 is—as the plaintiffs contend—exclusively a debt-collection mechanism. Indeed, it's a feature, not a bug, that § 9-100-120 both "raises money and improves compliance with traffic laws." *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009). And while some forfeitures may result from an inability to pay, that's not necessarily true in every case. One could, for example, imagine an owner who is able to pay but decides not to. Because O'Donnell and Goree must show that the "mere enactment" of § 9-100-120 is a taking, situation-specific arguments don't advance their facial challenge. *Keystone Bituminous Coal Ass'n*, 480 U.S. at 494. Their arguments that the underlying offenses may be minimal, or that the vehicle owner may not be the offending driver, fail for the same reason.

The plaintiffs also argue that § 9-100-120 is distinguishable from the forfeiture scheme permitted in *Bennis*, because the forfeited vehicle there was used in criminal activity and couldn't be reclaimed. See 516 U.S. at 453. Here, conversely, the City can seize cars not involved in any underlying violation, and owners need only pay to get their cars back. Though present, these dissimilarities don't render § 9-100-120 any less constitutional. First, allowing owners to recover their cars after paying is consistent with § 9-100-120's punitive purpose. Once owners pay their ticket debt, they've internalized the cost of their infractions and there's no need for the City to continue to hold their vehicles. Second, the sweeping nature of

Case: 1:23-cv-01192 Document #: 75 Filed: 01/13/26 Page 7 of 8 PageID #:941
Case: 24-2946　　Document: 00714683716　　Filed: 01/13/2026　　Pages: 8

No. 24-2946 7

§ 9-100-120's reach also serves a punitive purpose: if the City doesn't place every vehicle registered to an owner on the immobilization list, those with multiple vehicles can continue to drive, thwarting § 9-100-120's intended effect.

Finally, the plaintiffs err in relying on *Tyler v. Hennepin County*, 598 U.S. 631 (2023), to argue that the City commits a taking by retaining all vehicle sales proceeds without applying any of it to unpaid ticket debt. The principle at work in *Tyler*—that the government "may not take more from a taxpayer than she owes"—doesn't apply here, where the government enforces laws pursuant to its police power. *Id.* at 639; see also *Aldens, Inc. v. LaFollette*, 552 F.2d 745, 749 (7th Cir. 1977) (noting that the police and tax powers are distinct and subject to different limitations). In sum, § 9-100-120 is an exercise of the City's police power to enforce its traffic code, so the Takings Clause doesn't apply and the plaintiffs cannot establish a federal or state takings violation.

Because § 9-100-120's graduated forfeiture scheme doesn't constitute a taking, the plaintiffs' remaining claims also fail. For the purpose of this appeal, we can assume (without deciding) that URT is a state actor, because there is no underlying constitutional violation to support the plaintiffs' *Monell* claim against URT. See *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010). Nor do they have a viable unjust enrichment claim, which requires a showing that the defendant "has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *K-Stones, Inc. v. Ko*, 267 N.E.3d 363, 374–75 (Ill. App. Ct. 2025) (citation modified). Because the City lawfully

8                                              No. 24-2946

impounded and disposed of the plaintiffs' vehicles, there was no unjust benefit to it or to URT.

                                                                               AFFIRMED